Opinion of the court delivered by
Judge Catron.
This
bill is grounded upon the acts of 1801, ch. 6, and 1784, ch. 11. In 1797, James Tisdale, the father of defendants, became indebted to John Ritchie in the sum of ‡5186 48, *286 and executed three promissory notes, to secure the payment. The parties resided in Massachusetts where the contract was made. In 1798, Tisdale died intestate, and in 1799 John Davis administered upon his estate, and represented to the court of probate of Massachusetts, that the estate was insolvent. The court appointed commissioners to call before them the creditors, examine the claims, and report their amount to the court. Ritchie’s three claims were reported due amongst the others, amounting in all to ‡81,957 21. The administrator reported to the court assets to the amount only of $¡5,414 40. This amount was applied equally to the claims, extinguishing $6 60, in the hundred dollars, by order and judgment of the court of probate. Afterwards Ritchie assigned all his right and interest in and to the balance due on the notes of hand, and his interest in the amount declared due him by the report of the commissioners, and so admitted and declared by the court of Probate, to the complainant for a valuable consideration.
At the death of James Tisdale, he was entitled in equity to the moiety of eleven tracts of 5000 acres each lying in the Western District of Tennessee, the legal title of which vested in the heirs of Daniel Wheaton. In 1823 the legal title to said lands was by decree vested in Tisdale’s heirs, the defendants. In 1825 complainant filed her bill in the chancery court at Jackson, to subject the lands to the payment of her claims against James Tisdale’s estate. One of the heirs resided within the jurisdiction of the court, and was served with process; the others resided in Massachusetts. The resident heir demurred to the bill. The demurrer was sustained by the Chancellor, and the bill dismissed. From which decree the complainant appealed to this court.
The act of 1801, ch. 6, sec. 2, provides a remedy for foreign judgment creditors, where the debts are contracted, judgments rendered, and parties reside in sister states, and defendants own lands or goods in Tennessee. Previously no remedy had been prescribed. It is essentially a proceeding in rem — no personal notice is requir *287 ed and publication substituted. The statute cannot he made to apply to any case but the one provided for, being an encroachment upon the practice of courts of chancery, by giving-them jurisdiction to subject the estate of the defendant without personal notice, and when he resides beyond the jurisdiction of the court. It confers new and extraordinary powers.
If a judgment is recovered'by A against B in a sister state, and a fieri facias returned thereon by the proper officer “not satisfied,” and the defendant in the execution owns real or personal property in this state, upon a bill being exhibited for the purpose, the court have power and authority to render liable such property for the payment of the debt. To the defendant in the judgment alone does the act apply, where he owns property in Tennessee in his own right and not to an administrator of another state, where a judgment has been there recovered against him as such to be levied of the goods in his hands unadministered. He, as defendant, can own no lands here in his character of administrator, to say nothing at present of goods and chattels.
The act of 1784, ch. II, provides, that where the administrator is sued, pleads fully administered and the plea is iound in his favor, a scire facias may be run against the heir áse. and the lands descended rendered liable in his hands to the payment of the debt. The act applies exclusively to domestic judgments. The remedy provided must be strictly pursued, because, says the court in Roberts vs. Burby and wife, 3 Haywood’s Reports 299, it is in derogation of the common law, and an abridgement of the rights of heirs; therefore, should receive a strict construction. So again this court decided in Boyd vs. Armstrong’s heirs, in Peck vs. Wheaton’s heirs, in Hodge vs. Deaderick’s executors, in Williams vs. Sewell and Jones, in Nelson vs. Polk and others. The foreign judgment creditor has never had any remedy against the lands descended to to the heir by force of the foreign judgment; he must proceed through a do.mestic administrator, and in the man - ner prescribed by the act of 1784. Infinite confusion *288 and absurdity would be the consequence, if we could draw into courts foreign administrators. The heirs have a right by the act of 1784 to contest the justice oí the original demand, with the creditor of the ancestor,to the full extent the administrator had when first sued. Sneed vs. Mayfield’s heirs, Cooke’s Reports, 60. Neal vs. Combs, Knoxville. They have also a right to contest with the administrator the truth of the plea of fully administered, by section five of the act. The idea of our courts’ fencing an administrator, from Massachusetts, for instance, to produce to a court of equity here his voucher to prove he had fully administered there, would be most absurd. Still this is the undoubted right of the heirs, and cannot be withholden if the lands descended are subjected by virtue of the foreign judgment. The heirs having the right to contest the justice of the original demand with the creditor, he should be before the court; having the right also to contest the plea of fully administered with the administrator of the ancestor, the administrator should be before the court. Neither Ritchie, the creditor of the ancestor, nor Davis, his administrator, being before the court, this bill was correctly dismissed for want of parties, even had a court of equity jurisdiction. When the demurrer was sustained, the bill should have been amended below by adding parties, if this was the reason for sustaining the demurrer. It cannot be done here. Were the proper parties, however, before the court, the judgment on the demurrer must have been the same. One great object of the act was, to exhaust in the first place the personal property in payment of the debts; nolhibi-lity rests upon the heir until this is legally ascertained. Equity follows the law, and where the law creates no liability, equity cannot do so. As where a woman is indebted and marries, bringing a portion to her husband, and dies before the debt is recovered from the husband, the husband was only liable, and at all events, for the wife’s debts during coverture; when the contract ceases, the liability at law ceased with if Head vs. Stamford, 3 Peere Williams 409. Tim portion rexeived by the wife- *289 was £700, the debt £50, jet the chancellor decreed, that there being no legal liability, equity could afford no relief. So where there are partners jointly liable, and the creditor takes the bond of one of them and extinguishes the simple contract debt, and the partner who executed the bond, proves insolvent, against the partner who did not join in the bond, the legal liability is destroyed — equity follows the law, and will afford no relief. Penny vs. Martin, 4 John. Chan. Reports, 566. This court, in Peck vs. Wheaton’s heirs, decided the same point in 1828.— There Peck sued Daniel Wheaton’s administrator, who permitted the plea of fully administered to be found against him when he had no assets, and afterwards proved insolvent. Then a bill was filed to subject the real estate descended, worth near $>100,000, This court reversed the opinion of the Chancellor, who had decreed in favor of the complainant, and decided that there being no legal liability on the part of the heirs of Dan. Wheaton, equity could create none, and dismissed the bill. That case settled this. The liability never arises* nor can the heir be charged to the amount of assets descended, until the plea of fully administered is found for the domestic administrator of the ancestor. This, prima facie, ascertains the right, and the statute of 1784 affords the only remedy, where the heir has been guilty of no fraud, in preventing the finding of the plea for the administrator. Silch is the substance of the decision referred to which we follow and order the decree below to be affirmed.